IRVIN F. WILLMAN, APPELLEE, V. CHARLES H. SANDMAN
ET AL., APPELLANTS.

FILED APRIL 14, 1917.    No. 19266.

1. **Evidence:** MARKET VALUE. The knowledge on which a witness as
to the market value of real estate bases his opinion must not have
been acquired long before or after the rights of the parties be-
came fixed, and, where his only knowledge of such value is ac-
quired from one to two years subsequent to such time, it is too
remote.

2. **Evidence** examined, and *held* insufficient to sustain the verdict.

3. **Trial:** INSTRUCTIONS: ASSUMPTION OF FACT. "It is error for the
court to give an instruction which assumes as established a dis-
puted question of fact. It is for the jury alone to pass upon con-
flicting evidence." *Terry v. Beatrice Starch Co.,* 43 Neb. 866.

APPEAL from the district court for Lancaster county:
ALBERT J. CORNISH, JUDGE. *Reversed.*

*B. F. Good, Charles H. Denney* and *John C. Hartigan,*
for appellants.

*George W. Berge, contra.*

MORRISSEY, C. J.

This is an action to recover damages for fraudulent
representations in the exchange of property. In Septem-
ber, 1911, plaintiff was the owner of 320 acres of land in
South Dakota, and some personal property in Lancaster
county, Nebraska. Defendant Charles H. Sandman was
the owner of 160 acres of land in Colorado, and defendant
Elmer E. Bevard was a real estate agent residing in the
City of Lincoln. Through negotiations conducted by Be-
vard, plaintiff exchanged his South Dakota land, an auto-
mobile, a few village lots, and some cash for the land
owned by defendant Sandman in Colorado. Subsequently
plaintiff brought this action, alleging that through the
false and fraudulent representations of Sandman, made
by his agent Bevard, plaintiff had been deceived as to the

value and character of the Colorado land. The petition is very long and sets out in detail the alleged fraudulent representations. Among other things, it alleges that the Colorado land was represented to be worth $12,000, and that plaintiff paid that sum therefor; that it was not worth to exceed $500, and plaintiff was thereby damaged $11,500. It is also alleged that plaintiff went upon the land, made improvements thereon, and attempted to farm the same, and prays for damages for the value of the improvements placed on the land, and the loss of seed, labor and time.

Defendant Sandman denied that there was any joint cause of action against him and the defendant Bevard; denied that Bevard was his agent; alleged that he dealt with Bevard believing him to be the agent of the plaintiff; denied all allegations of fraud on his part; and denied that he received anything in consideration for the Colorado land except a deed for the land in South Dakota; and he brought a deed to this into court and tendered it to plaintiff. He alleged that he purchased the Colorado land in 1909, and paid $45 an acre therefor, and had no knowledge or information that it was not worth the whole amount at which he valued it in the trade with the plaintiff, and denied generally the allegations of plaintiff's petition. Bevard admitted showing the real estate, but denied all other allegations of the petition.

The testimony in behalf of plaintiff was taken chiefly in the form of depositions. At the time the depositions were taken plaintiff evidently was proceeding on the theory that his measure of recovery was the difference between the alleged purchase price and the real value at the time the exchange was made. The trial court properly instructed the jury that the measure of recovery was the difference between the value of the land at the time of the exchange and what its value would have been if the land had been as represented, and properly withdrew from the jury consideration of the other causes of action, set out in the petition. Evidence was admitted showing

the value of the improvements plaintiff made on the land and the extent of his labor thereon. Later this was withdrawn from the consideration of the jury; but, in view of the verdict rendered, it is doubtful if the jury heeded the court's admonition to disregard it.

The petition does not expressly say what the value of the property would be if it had been as represented. But defendants neither demurred nor asked to have it made more definite and certain, and the cause was finally submitted on the theory that it contained the equivalent of such an allegation. The true measure of damages does not appear to have been in contemplation of the plaintiff until the trial of the cause was nearly completed; and the only testimony calculated to sustain the verdict is that of plaintiff, who testified to the effect that, from what he learned in the years 1912 and 1913, he was able to say that, if the land had been as represented, it would have been worth, at the time of the trade, September, 1911, $75 an acre; and he testified that the whole tract was worth not to exceed $500. This is not directly disputed, but there is evidence of exchanges of real estate in the same neighborhood, at that time, at a higher figure. There is also evidence as to the character of the soil, the action of water thereon, and the failure of crops, and some testimony as to the market value of land in the neighborhood. There is the testimony of one witness that he had traded the south half of the section wherein this land lies, about 3 months prior to the deal in controversy, at $100 an acre. This is in excess of the trading value placed on the land. Trading values are generally unsatisfactory. They seldom represent the true market value of property. In the instant case it is quite evident that both parties put trading values on their property far in excess of their true value.

Plaintiff had purchased the South Dakota land at $12 an acre. He traded it in at $18. A used automobile went in at its cost price. The town lots were situated in small villages and were of doubtful value. Defendant Sandman had paid $45 an acre for the Colorado property, and it was

put in at $75. We may well assume that each party knew the other was pricing his property at more than it would bring in cash on the market. These inflated values are entitled to scant consideration. The true measure of damages is that laid down in the court's instructions.

In 1911 plaintiff was living in Nebraska, and alleges that he was in total ignorance of the value of the Colorado land. His testimony as to what he subsequently learned is too remote, and is insufficient to sustain the verdict. The rule is: "The knowledge must not have been acquired long before or after the rights of the parties became fixed." 13 Ency. of Evi. p. 488. In *First Nat. Bank v. Coffin*, 162 Mass. 180, the court said of a witness who acquired his information of values 1½ years subsequent to the transaction: "The testimony might well have been excluded, on the ground that it was too remote in point of time."

The verdict finds so little support in the evidence as to suggest that the jury disregarded the instruction of the court as to the true measure of damages.

Instruction No. 3 is criticized. It reads:

"You are instructed that, to entitle the plaintiff to recover, the burden of proof in this action is upon him to prove by a preponderance of the evidence all the material allegations of his petition not admitted by defendants; that the defendants, or either of them, made representations alleged in the petition, or some of them; that, as against defendant Sandman, Bevard, in making representations, was acting for Sandman, the two having a common design, Bevard being his agent, as alleged in the petition, or that after learning the fraud alleged against him, Sandman ratified and adopted them, accepting the fruits thereof; also that said representations were untrue and were falsely and fraudulently made for the purpose of inducing the plaintiff to enter into the contract for the exchange of properties; that under the circumstances the plaintiff had a right to rely, and did rely, upon the representations so made; that the representations were material representations touching the value and character of the land; that

plaintiff was thereby induced to enter into the contract; that he was thereby damaged, and the amount of such damages. The burden of proof is upon Sandman to prove that any tender back of property was made within a reasonable time after discovery of fraud."

This permits a recovery if the jury should find any of the allegations in the petition to be true, notwithstanding that the court had withdrawn certain of these allegations from their consideration. The concluding clause may also be open to criticism because it omits reference to the proof of fraud.

Instruction No. 7, which we shall not set out at length, also seems to assume matters that are clearly for the jury to determine. It is unnecessary to discuss or determine the other questions raised, as they are not likely to occur on a retrial.

For the errors already pointed out, the cause is reversed and remanded for further proceedings.

REVERSED.

LETTON and CORNISH, JJ., not sitting.